United States District Court
Southern District of Texas
**ENTERED**
September 20, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMIAH PALMER, | § | |
| TDCJ #02119464, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-23-0179 |
| v. | § | |
| | § | |
| RODGER BOWERS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Jeremiah Palmer (TDCJ #02119464), has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that he was denied adequate medical care for back pain at the Wynne Unit by Tanesha Tran, an advanced practice registered nurse. He also alleges that several officers used excessive force against him during an incident that occurred on August 31, 2022, which aggravated his medical condition. The plaintiff represents himself and he has been granted leave to proceed in forma pauperis (Order Granting Motion to Proceed In Forma Pauperis, Docket Entry No. 6, p. 2 ¶ 1). At the court's request, he has provided a more definite statement of his claims ("Plaintiff's MDS") (Docket Entry No. 9).

Now pending before the court are Defendant Tanesha Tran's Motion for Summary Judgment ("Tran's MSJ") (Docket Entry No. 30)

and Defendants Warden Roger Bowers, Ryan Choat, Justin Sands-Wable,[1] and Johnny Walker's Motion for Summary Judgment ("TDCJ Defendants' MSJ") (Docket Entry No. 31). Palmer has filed a response ("Palmer's Response") (Docket Entry No. 34). After considering the pleadings, the motions, the exhibits, and the applicable law, the court will grant Tran's MSJ and the TDCJ Defendants' MSJ for the reasons set forth below. The claims against the remaining defendants — Thompson, Harrison, and Henderson — are also discussed below.

## I.  Background

### A.  Palmer's Allegations

Palmer alleges that in the middle of May 2022 he started "to have real bad back pains in [his] lower back all the way down to [his] left leg."[2]  One evening in May he asked Lieutenant Cooley and Captain Sands-Wable to be escorted to medical.[3]  Cooley and Sands-Wable escorted Palmer to the "main cage" to wait for a response from medical.[4]  At some point, the officers returned and told Palmer that medical "couldn't and wouldn't do anything to

---

[1]In his pleadings, Palmer refers to defendant Justin Sands-Wable as Justin Sands.  The court will refer to this defendant by his correct last name, Sands-Wable.

[2]Complaint, Docket Entry No. 1, p. 4; Plaintiff's MDS, Docket Entry No. 9 at 1.  For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[3]Complaint, Docket Entry No. 1, p. 4.

[4]Id.

help" him.[5]  Palmer was brought back to his cell where he "remained

for another 2-weeks in pain."[6]

Around June 8, 2022, Palmer was seen by nurse J. White in the

infirmary.[7]  Palmer told Nurse White that he was having trouble

walking and that his pain was in his lower back area.[8]  Nurse White

gave Palmer "doses of muscle relaxers" and told him the pain would

go away.[9]  Around June 16, 2022, Palmer was seen by Tran.[10]  Palmer

told Tran about "the pain [he] was enduring."[11]  Palmer "showed

[Tran] that [his] body was going crooked [and he] could barely

walk."[12]  He also told her that he was sleeping on the floor and

that he could not use the restroom "properly" because he was not

able to stand for a long period of time.[13]  Tran responded that the

issue was with Palmer's sciatic nerve, and she prescribed him

Duloxetine, Comeprazole, and Docusate.[14]

---

[5] Id.

[6] Id.

[7] Id. at 5.

[8] Id.

[9] Id.

[10] Id.

[11] Id.

[12] Id.

[13] Id.

[14] Id.

Palmer states that he took the medication for about a month, but he continued to have pain in his lower back and left leg.[15] Palmer wrote an I-60 addressed to Tran, explaining that the medications "failed to work."[16]  Palmer claims that Tran never responded to his sick calls.[17]

Around the end of July 2022, Palmer was in extreme pain and could not "walk at all or move[.]"[18]  During his shift, Officer G. Thompson noticed that something was wrong with Palmer and asked what was wrong.[19]  Palmer responded that he was in severe pain and needed medical attention "A.S.A.P."[20]  Officer Thompson notified medical on Palmer's behalf, and Tran told Officer Thompson that Palmer had an appointment scheduled for August 2, 2022.[21]

Palmer states that he was never seen by medical on August 2 and when he complained that he was not seen on that day, he was told that he had refused to go to medical.[22]  Palmer claims that this is not true, and that he never refused to go to medical.[23]

---

[15] Id.

[16] Id.

[17] Id.

[18] Id.

[19] Id.

[20] Id.

[21] Id.

[22] Id.

[23] Id.

-4-

Palmer submitted a grievance about the missed medical appointment and in the response section to his Step 2 grievance, it stated that "Ms. Tran advised to the warden that [Palmer] told her that [he] was feeling better[.]"[24]  Palmer states that this is false.[25]

On August 31, 2022, at around 10:30 p.m., Palmer was "in so much pain" due to his back that he "couldn't take it" and he tried to get the attention of several TDCJ officers.[26]  Palmer was unsuccessful in getting the officers' attention, so he set a fire in front of his cell.[27]  Officers G. Thompson, Ryan Choat, Sergeant Harrison, Lieutenant Walker, and Officer Henderson came to Palmer's cell and "roughly handled" him.[28]  Palmer claims that this use of force was done in response to requesting medical attention and that these officers knew about his condition when they conducted the use of force.[29]  Palmer was punched in his back and head, kneed in his back, poked in the eye, and dragged to another cell.[30]  Walker sprayed Palmer with a chemical agent.[31]

---

[24]Id.

[25]Id.

[26]Plaintiff's MDS, Docket Entry No. 9, p. 1.

[27]Plaintiff's MDS, Docket Entry No. 9, p. 1.

[28]Complaint, Docket Entry No. 1, p. 6.

[29]See Complaint, Docket Entry No. 1, p. 6; Plaintiff's MDS, Docket Entry No. 9, p. 1.

[30]Complaint, Docket Entry No. 1, p. 6; Plaintiff's MDS, Docket Entry No. 9, p. 2.

[31]See Plaintiff's MDS, Docket Entry No. 9, p. 2.

On September 1, 2022, Palmer was taken to the infirmary for a use of force physical.[32]  On his way back to his cell, Palmer was stopped by Tran, who sent him to Huntsville Memorial Hospital because he could barely walk.[33]  A CAT scan at the hospital showed that the use of force caused a disc in Palmer's back to be knocked out of place.[34]  The physicians at the hospital told Palmer that his "body was crooked because the slipped Dis[k], was putting pressure on [his] nerve, and [he] would have to have surgery before it paralyzes [him] from the fluid that was leaking out of [his] spine."[35]  Palmer was then rushed to Galveston Hospital, where more medical tests were conducted and the need for surgery was confirmed.[36]  Palmer stayed at Galveston Hospital from September 1-7, 2022, and he had surgery on October 26, 2022.[37]  After the surgery on October 26, Palmer was released from the hospital that same day and was sent back to the Wynne Unit.[38]  Palmer is currently prescribed Duloxetine and receives physical therapy for his back pain.[39]

---

[32]Complaint, Docket Entry No. 1, p. 6.

[33]Id.

[34]Id.; Plaintiff's MDS, Docket Entry No. 9, p. 2.

[35]Complaint, Docket Entry No. 1, p. 6.

[36]Id.

[37]Id.

[38]Id.

[39]See Plaintiff's MDS, Docket Entry No. 9, p. 1.

## B.   Procedural Posture

Palmer initiated this action in January of 2023 by filing a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 (Docket Entry No. 1).   At the court's request, Palmer submitted a more definite statement of his claims (Docket Entry No. 9).  Palmer named the following as defendants:  (1) Warden Rodger Bowers; (2) Sergeant Ryan Choat; (3) Captain Justin Sands-Wable; (4) Officer Gary D. Thompson; (5) Lieutenant Johnny Walker; (6) Sergeant Harrison; (7) Officer Henderson; and (8) Tanesha Tran.  Palmer claims that Tran was deliberately indifferent to his serious medical needs when the medication she prescribed for him "didn't work," when she refused his sick calls, and when she refused to send him to the hospital to receive proper treatment.[40]   He further claims that Thompson, Choat, Harrison, Walker, and Henderson used excessive force against him on August 31, 2022, when they punched him in the back and head, kneed his back, poked him in the eye, and sprayed him with a chemical agent.[41]  He claims that the use of force aggravated his back injury and caused the slipped disk, which required corrective surgery.[42]  Palmer alleges that Warden Bowers tried to "cover up" Palmer's "medical conditions by lying to [his] family [and] stating nothing was wrong with [Palmer] [and] that [he] was

---

[40]See id.; Complaint, Docket Entry No. 1, p. 5.

[41]Complaint, Docket Entry No. 1, p. 6; Plaintiff's MDS, Docket Entry No. 9, p. 2.

[42]See Plaintiff's MDS, Docket Entry No. 9, p 2.

-7-

okay. . . . "[43]   Without providing any dates, Palmer alleges that Sands-Wable "denied me medical 3 different times, stating he had no staff when he in fact had medical escorts. . . ."[44]

After screening Palmer's pleadings as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the court ordered Bowers, Choat, Sands-Wable, Thompson, Walker, Harrison, Henderson, and Tran to answer (Order and Request for Answer, Docket Entry No. 16, p. 2).

On July 24, 2023, the defendants filed an answer titled Defendants' Answer and Affirmative Defenses ("Defendants' Answer") (Docket Entry No. 19).   On March 28, 2024, Tran filed Tran's MSJ (Docket Entry No. 30) and defendants Bowers, Choat, Sands-Wable, and Walker filed TDCJ Defendants' MSJ[45] (Docket Entry No. 31).

In Tran's MSJ she asserts that she is entitled to qualified immunity from the claims against her.[46]   Pointing to medical records that refute Palmer's claims, Tran argues that Palmer fails to establish that she denied him care in violation of the Eighth Amendment.[47]   In support, Tran provides an affidavit from Dr. James D. Geddes, M.D. ("Dr. Geddes"), as well as medical

---

[43]Id.

[44]Id.

[45]For purposes of this Memorandum Opinion and Order, the term "TDCJ Defendants" refers only to defendants Bowers, Choat, Sands-Wable, and Walker.

[46]Tran's MSJ, Docket Entry No. 30, pp. 4-10.

[47]Id.

records of treatment provided at TDCJ and the University of Texas
Medical Branch ("UTMB") Hospital in Galveston, which provides care
for state inmates.[48]

The TDCJ Defendants argue that they are entitled to summary
judgment because Palmer failed to exhaust the administrative
grievance process as required before filing this suit.[49]  In support
of their motion, the TDCJ Defendants have attached Palmer's
grievance records for the period of March 1, 2022, to May 5, 2023.[50]
Despite filing an answer, defendants Thompson, Harrison, and
Henderson did not join in the TDCJ Defendants' MSJ.

Palmer has filed a response.[51]   In Palmer's Response, he
addresses only the arguments made in Tran's MSJ; he does not
respond to the TDCJ Defendants' MSJ.[52]

C.   **Defendants' Summary Judgment Evidence**

1.   <u>TDCJ Defendants' MSJ</u>

The TDCJ Defendants move for summary judgment, arguing that
Palmer failed to exhaust the administrative grievance process as

---

[48]<u>See</u> Affidavit of James D. Geddes, M.D. ("Geddes Affidavit")
and Medical Records, Ex. A to Tran's MSJ, Docket Entry No. 30-2.

[49]TDCJ Defendants' MSJ, Docket Entry No. 31, pp. 4-8.

[50]<u>See</u> TDCJ Offender Grievance Records for Jeremiah Palmer with
supporting business records affidavit ("Grievance Records/
Affidavit"), Ex. B to TDCJ Defendants' MSJ, Docket Entry No. 31-3.

[51]Palmer's Response, Docket Entry No. 34.

[52]<u>See id.</u>

required before filing this suit.[53]  In support of their motion, the
TDCJ Defendants have attached Palmer's grievance records for the
period of March 1, 2022, to May 5, 2023.[54]

    2.   Tran's MSJ

    Tran also moves for summary judgment, arguing that Palmer
fails to establish a constitutional violation or to overcome her
entitlement to qualified immunity from the claims against her.  In
support of her motion, Tran has submitted an affidavit from
Dr. Geddes, a Regional Medical Director for UTMB, which recounts in
detail Palmer's medical history concerning his back and leg pain.[55]
Also attached to Tran's MSJ are more than 60 pages of Palmer's
medical records.[56]

    Palmer first entered TDCJ custody in March of 2017 when he was
approximately 18 years old.[57]  Palmer was transferred to the Wynne
Unit in April of 2022.[58]  When he arrived at the Wynne Unit, Palmer

---

[53]See TDCJ Defendants' MSJ, Docket Entry No. 31, pp. 4-8.

[54]See Grievance Records/Affidavit, Ex. B to TDCJ Defendants'
MSJ, Docket Entry No. 31-3.

[55]See Geddes Affidavit, Ex. A to Tran's MSJ, Docket Entry
No. 30-2, pp. 2-7.

[56]See Medical Records, Ex. A to Tran's MSJ, Docket Entry
No. 30-2, pp. 12-74.

[57]See Plaintiff's MDS, Docket Entry No. 9, p. 2 (Palmer stating
that he was 23 years old when the alleged use of force occurred on
August 31, 2022).

[58]See Correctional Managed Health Care Medical and Mental
Health Transfer Screen, Ex. A to Tran's MSJ, Docket Entry No. 30-2,
p. 13.

had    active    diagnoses    for    hypertension,    hyperlipidemia,
folliculitis, and unspecified chest pain.[59]  He was being prescribed
Atorvastatin, Hydralazine, and Lisinopril for these conditions.[60]
He was seen by medical staff at the Wynne Unit on April 21, 2022,
for a medical transfer screening.[61]  No health complaints were noted
at that time.[62]

On May 29, 2022, Palmer complained of sharp, throbbing pain in
his left lower back, buttocks, and leg and was seen in the Wynne
Unit's medical clinic.[63]  An examination by staff at the medical
clinic showed full range of motion of the complained of area,
normal joints, normal movement, and a limp gait.[64]   Palmer was
prescribed methocarbamol (a muscle relaxer) and naproxen (an anti-
inflammatory and pain reliever).[65]

On  June  2,  2022,  Palmer  submitted  a  sick-call  request
complaining of pain in his lower back that traveled down to his
leg.[66]   An appointment in the medical clinic was scheduled for

---

[59]See id. at 12.

[60]See id.

[61]See id.

[62]See id. at 13.

[63]See Correctional Managed Health Care Nursing Protocol for
Musculoskeletal Symptoms, Ex. A to Tran's MSJ, Docket Entry
No. 30-2, pp. 17, 19.

[64]See id. at 17–18.

[65]See id. at 19; Geddes Affidavit, Ex. A to Tran's MSJ, Docket
Entry No. 30-2, p. 4.

[66]Sick Call Req., Ex. A to Tran's MSJ, Docket Entry No. 30-2,
p. 22.

-11-

June 6, 2022, but that appointment did not take place due to security issues.[67]   Palmer submitted another sick-call request on June 8, 2022, complaining of back pain.[68]   He complained that his pain medication was not working, that he could barely walk, that his left leg was numb down to his foot, and that he was unable to sleep due to the pain.[69]   Palmer submitted another sick-call request on June 10, 2022, making the same complaints.[70]

On June 14, 2022, Palmer was seen by Tran in the Wynne Unit's medical clinic.[71]   At that time, Palmer complained of continued pain from his lower back radiating to his left leg.[72]   He denied any recent injury or trauma, and he also denied that he was unable to perform activities of daily living.[73]   An examination of Palmer revealed full range of motion in the affected area and a steady, even gait.[74]   A strait leg raising test was also performed and the

---

[67]See Memo from Med Asst. Mariah Fryman, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 23; Geddes Affidavit, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 4.

[68]Sick Call Req., Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 24.

[69]Id.

[70]Id. at 25.

[71]See Correctional Managed Health Care Clinic Notes, Ex. A to Tran's MSJ, Docket Entry No. 30-2, pp. 26–30.

[72]Id. at 30.

[73]Id.

[74]Id.

results indicated gluteal or leg pain, which Dr. Geddes explains may correlate with nerve root irritation.[75]   Tran indicated that Palmer may have sciatic nerve pain, and she prescribed him Acetaminophen, Duloxetine, and Prednisone for pain and inflammation.[76]   Tran educated Palmer on back stretching exercises, and she referred him for a nerve conduction velocity test and electromyography .[77]

On June 21, 2022, Tran again saw Palmer in the Wynne Unit's clinic based on his previously submitted sick calls.[78]   Palmer reported that his symptoms had improved since the June 14 visit.[79]

On July 8, 2022, Palmer submitted a sick-call request, complaining of lower back pain.[80]   Nursing staff responded to Palmer that he would be scheduled for a provider sick call appointment within 14 days due to a unit lock down.[81]   On July 28, 2022, Palmer submitted another sick-call request, again complaining of pain in

---

[75]Id. at 30, 33; Geddes Affidavit, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 4.

[76]Correctional Managed Health Care Clinic Notes, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 30.

[77]Id. at 30, 33.

[78]See id. at 34-38.

[79]Id.

[80]Sick Call Req., Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 39.

[81]See id.

his left leg.[82]   In response, nursing staff scheduled a provider sick call for September 1, 2022.[83]   On August 31, 2022, Palmer submitted an I-60 complaining of lower back pain; nursing staff responded by stating that he had a provider sick call scheduled for September 1.[84]

Palmer was seen in the unit clinic on September 1, 2022.[85]   He arrived at the clinic ambulatory, but with great difficulty.[86] Palmer complained that he had constant, radiating pain on his left back, hip, and leg.[87]   He denied suffering an injury that caused the pain and stated that he "woke up like this [four months] ago and it has consistently become worse."[88]   Clinic staff ordered X-ray imaging of Palmer's thoracic and lumber spine.[89]   Palmer was given pain medication and referred to the emergency department at the Huntsville Memorial Hospital due to his complaints of severe pain, limited range of motion, and difficulty walking.[90]   Dr. Geddes

---

[82]Id. at 40.

[83]See id. at 41.

[84]Id.

[85]Correctional Managed Health Care Urgent/Emergent Care Record, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 42.

[86]See id. at 45.

[87]See id. at 43.

[88]Id. at 45.

[89]See id. at 44-45.

[90]See id. at 45-46.

-14-

reports that at Huntsville Memorial Hospital, medical staff performed CT imaging.[91]  Dr. Geddes further reports that Palmer was then transferred and admitted to Hospital Galveston that same day for a neurosurgery consultation where spinal imaging showed a bulging disk in Palmer's lower spine.[92]  Palmer was diagnosed with lumbar stenosis.[93]  Dr. Geddes explains that lumbar stenosis is the "[n]arrowing of the spinal canal which compresses nerves traveling through the lower back and into the legs."[94]  Palmer was prescribed Acetaminophen-Codeine and Gabapentin for pain.[95]  Dr. Geddes states that Palmer was scheduled to undergo a laminectomy and a discectomy in October of 2022 to treat his condition.[96]  Dr. Geddes explains that a laminectomy is a "[s]urgical procedure that removes a portion of the vertebra to help ease pressure on the spinal cord or nerve roots that may be caused by a herniated disk."[97]  Dr. Geddes further explains that a discectomy is a "[s]urgical procedure to

---

[91]Geddes Affidavit, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 5.

[92]Id.

[93]See Correctional Managed Health Care Hospital/ER Discharge Assessment, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 60.

[94]Geddes Affidavit, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 5 n.17.

[95]See Correctional Managed Health Care Hospital/ER Discharge Assessment, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 60.

[96]Geddes Affidavit, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 5.

[97]Id. at 5 n.18.

remove abnormal dis[k] material that presses on a nerve root or the spinal cord."[98]

While at Hospital Galveston, a physical therapist evaluated Palmer on September 2, 2022, and recommended that he receive physical therapy one to two times daily while in the hospital and at least two times per week after he is discharged.[99]   An occupational therapist evaluated Palmer on September 4, 2022, and determined that he did not have occupational therapy needs.[100] Palmer was discharged to the Wynne Unit from Hospital Galveston on September 7, 2022.[101]

On September 14, 2022, a provider at the Wynne Unit submitted a nonformulary prescription request for Gabapentin pursuant to the Hospital Galveston physician's recommendation.[102]   The nonformulary request was deferred by the pharmacy.[103]   Dr. Geddes explains that Gabapentin is "not favored for use in the prison system due to higher rates of abuse or misuse."[104]   Instead, the pharmacist

---

[98]Id. at 5 n.19.

[99]UTMB Health, Ex. A to Tran's MSJ, Docket Entry No. 30-2, pp. 49-51.

[100]Id. at 52-54.

[101]See id. at 54.

[102]Approval Req. for Gabapentin, Ex. A to Tran's MSJ, Docket Entry No. 30-2, pp. 57-58.

[103]Id.

[104]Geddes Affidavit, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 6.

recommended using a preferred formulary medication, such as Duloxetine, for Palmer's pain management.[105]

On September 16, 2022, nursing staff at the Wynne Unit evaluated Palmer and completed a Hospital Discharge Assessment.[106] Nursing staff, in consultation with Tran, ordered an abdominal binder for Palmer and noted that a follow up appointment with a Hospital Galveston specialist needed to be scheduled.[107] Later that day, Palmer complained of herniated disk and back pain.[108] The provider on call prescribed a muscle relaxer.[109] On September 23, 2022, Palmer submitted a sick-call request complaining of continued back pain.[110] On September 25, 2022, Palmer was seen by a unit provider regarding follow up from his appointment with the specialist from Hospital Galveston, as well as in response to multiple sick calls regarding his back pain.[111] The provider instructed Palmer to walk and stretch every day for pain management

---

[105] Approval Req. for Gabapentin, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 57.

[106] See Correctional Managed Health Care Hospital/ER Discharge Assessment, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 59.

[107] See id. at 61.

[108] See Correctional Managed Health Care Nurse Triage Form, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 62.

[109] See id. at 62–64.

[110] Sick Call Req., Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 65.

[111] See Correctional Managed Health Care Clinic Notes, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 66.

and to continue taking Cymbalta for nerve pain.[112]   The provider
prescribed Ibuprofen and Acetaminophen for pain management.[113]

On October 26, 2022, Palmer underwent spinal surgery at
Hospital Galveston.[114]   He was discharged the following day with
instructions for no heavy lifting or strenuous activity and to
follow up in six weeks.[115]   Palmer was referred for physical therapy
as recommended by a Hospital Galveston specialist.[116]   A physical
therapist evaluated Palmer and recommended that he undergo skilled
physical therapy services twice a week for six weeks.[117]   Palmer was
transferred to the Estelle Unit in February of 2023 to receive the
weekly therapy.[118]

Dr. Geddes makes the following observations about Palmer's
lumbar stenosis diagnosis:

---

[112]See id. at 70.

[113]Id. at 70-71.

[114]See Operative Notes, Ex. B to Tran's MSJ, Docket Entry
No. 30-3, p. 99.

[115]See id. at 100-102; Correctional Managed Health Care HG
Inmate Medical Pass, Ex. B to Tran's MSJ, Docket Entry No. 30-3,
p. 44; Correctional Managed Health Care MD/MLP Chart Review, Ex. B
to Tran's MSJ, Docket Entry No. 30-3, p. 53.

[116]See Correctional Managed Health Care MD/MLP Chart Review,
Ex. B to Tran's MSJ, Docket Entry No. 30-3 p. 127.

[117]Correctional Managed Health Care Physical Therapy Clinic
Note, Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 73;
Correctional Managed Health Care Specialty Clinic Referral, Ex. B
to Tran's MSJ, Docket Entry No. 30-3, p. 132.

[118]See Correctional Managed Health Care Physical Therapy Clinic
Note, Ex. A to Tran's MSJ, Docket Entry No. 30-2, pp. 72-74.

Lumbar stenosis is a degenerative condition of the spine where the intervertebral dis[k]s deteriorate and start to bulge out. Bulging disks can put pressure on the spinal cord or the nerves traveling down the spinal canal, causing pain in the back, buttocks, or legs, depending on the nerves affected. While lumbar stenosis is a degenerative condition, it is not common in a patient who is only 25 years old. Lumbar stenosis can sometimes be caused by physical trauma, which is consistent with Plaintiff's report that his back pain started following a physical altercation in 2019 (prior to his incarceration in the TDCJ). Lumbar stenosis can sometimes improve on its own, under certain circumstances, if the patient can reduce the amount of physical stress and wear on the spine. However, surgical intervention is a standard treatment for this condition.

Geddes Affidavit, Docket Entry No. 30-2, pp. 6-7.

## II.  Standards of Review

### A.  Motion for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

If the movant demonstrates an "'absence of evidentiary support in the record for the nonmovant's case[,]'" the burden shifts to

-19-

the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." <u>Sanchez v. Young County, Texas,</u> 866 F.3d 274, 279 (5th Cir. 2017) (citing <u>Cuadra v. Houston Independent School District,</u> 626 F.3d 808, 812 (5th Cir. 2010)); <u>see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,</u> 106 S. Ct. 1348, 1356 (1986).   In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party[.]" <u>Dillon v. Rogers,</u> 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted).   Factual controversies, however, are resolved in favor of the non-movant only when "both parties have submitted evidence of contradictory facts." <u>Alexander v. Eeds,</u> 392 F.3d 138, 142 (5th Cir. 2004) (internal quotation marks omitted).   Without proof, a reviewing court will not assume that the non-movant could or would prove the necessary facts.  <u>See McCallum Highlands, Ltd. v. Washinton Capital Dus, Inc.,</u> 66 F.3d 89, 92 (5th Cir. 1995).

## B.   Qualified Immunity

Defendant Tran has asserted qualified immunity from suit in this case.   Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.  <u>See Harlow v. Fitzgerald,</u> 102 S. Ct. 2727, 2738 (1982).   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986).   A plaintiff seeking to overcome qualified immunity must show:  "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."   Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).   If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is appropriate, nevertheless, "because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"   Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) (quoting Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004)).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available."   King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016) (internal quotation marks and citation omitted).   "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."   Brown, 623 F.3d at 253 (citation omitted).   "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established

right of which a reasonable officer would have been aware." <u>Brewer</u> <u>v. Hayne,</u> 860 F.3d 819, 824 (5th Cir. 2017).

At the summary-judgment stage, a plaintiff does not satisfy his burden to overcome the defense of qualified immunity with conclusory allegations or unsubstantiated assertions of wrongdoing. <u>See Mitchell v. Mills,</u> 895 F.3d 365, 370 (5th Cir. 2018); <u>Williams-Boldware v. Denton County, Texas,</u> 741 F.3d 635, 643-44 (5th Cir. 2014).

## C.   <u>Pro Se</u> Pleadings

The court is mindful that the plaintiff represents himself. Courts are required to give a <u>pro se</u> litigant's contentions a liberal construction. <u>See Erickson v. Pardus,</u> 127 S. Ct. 2197, 2200 (2007) (per curiam) (citing <u>Estelle v. Gamble,</u> 97 S. Ct. 285, 292 (1976)); <u>see also Haines v. Kerner,</u> 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a <u>pro se</u> complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Nevertheless, a <u>pro se</u> litigant is not excused from meeting his burden of proof by specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. <u>See Outley v. Luke & Associates, Inc.,</u> 840 F.3d 212, 217 (5th Cir. 2016); <u>see also Bookman v. Shubzda,</u> 945 F. Supp. 999, 1004 (N.D. Tex. 1996). The court has no obligation under Rule 56 "to sift through the record

-22-

in search of evidence to support a party's opposition to summary judgment." <u>Adams v. Travelers Indemnity Company of Connecticut,</u> 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks and citation omitted).

### III. <u>Discussion</u>

#### A.   TDCJ Defendants' MSJ

The TDCJ Defendants argue that Palmer failed to properly exhaust administrative remedies, which is an affirmative defense.[119] <u>See Jones v. Bock,</u> 127 S. Ct. 910, 921 (2007); <u>Herschberger v. Lumpkin,</u> 843 F. App'x 587, 590 (5th Cir. 2021) (emphasizing that "the failure to exhaust administrative remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal") (citations omitted).  In particular, the TDCJ Defendants argue that Palmer's grievance records do not contain any grievances related to the alleged use of force that occurred on August 31, 2022, any grievances that Bowers lied to Palmer's family or tried to cover up Palmer's medical issues, or any grievances that Sands-Wable denied him medical treatment.[120]

This case is governed by the PLRA, 42 U.S.C. § 1997e(a), which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,

---

[119]TDCJ Defendants' MSJ, Docket Entry No. 31, pp. 4-8.

[120]<u>Id.</u> at 7.

> or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Because this requirement is mandatory, Palmer was required to exhaust administrative remedies before filing his lawsuit about the conditions of his confinement.  See Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006) (citing Porter v. Nussle, 122 S. Ct. 983, 988 (2002)); Booth v. Churner, 121 S. Ct. 1819, 1825 (2001); see also Jones, 127 S. Ct. 918-19 (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court") (citation omitted).

TDCJ has a formal two-step administrative grievance process.  See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004).  A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event.  See id. at 515.  Once an inmate receives a response to his Step 1 grievance, he then has ten days to file a Step 2 grievance to appeal an unfavorable result at the state level.  See id.  A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement.  See id.  Substantial compliance with this process is not enough to exhaust remedies under the PLRA.  See Dillon, 596 F.3d at 268 ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion . . .") (citations omitted).

-24-

Based on the uncontradicted summary judgment record, Palmer did not complete both steps of the two-step TDCJ grievance process for his claims against the TDCJ Defendants before filing suit in this case. As the Supreme Court has clarified, prisoners may not deliberately bypass the administrative process by flouting or failing to comply with an institution's procedural rules where the exhaustion of remedies is concerned. See Woodford, 126 S. Ct. at 2389. Because Palmer failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a), the TDCJ Defendants are entitled to summary judgment on Palmer's claims against them.

**B.   Tran's MSJ**

Palmer's claims against Tran are governed by the Eighth Amendment, which prohibits cruel and unusual punishment, i.e., the "'unnecessary and wanton infliction of pain.'" Wilson v. Seiter, 111 S. Ct. 2321, 2323 (1991) (citation omitted). To establish a claim for the denial of adequate medical care a prisoner must demonstrate that prison officials violated the Eighth Amendment by acting with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle, 97 S. Ct. at 291.

The deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and

-25-

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 1984.

A prisoner who alleges that he was denied medical care with deliberate indifference must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citation and internal quotation marks omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Id. (citations omitted).

The medical records and Dr. Geddes's Affidavit submitted as part of the summary judgment record refute Palmer's claims that Tran ignored his sick calls or was deliberately indifferent to his serious medical needs. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's

-26-

allegations of deliberate indifference." <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995) (citing <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193-95 (5th Cir. 1993)); <u>Brauner v. Coody</u>, 793 F.3d 493, 500 (5th Cir. 2015) ("Deliberate indifference is not established when 'medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials[.]'") (quoting <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997)).

As discussed in detail above, during the two times that Tran herself treated Palmer, she provided appropriate care. On June 14, 2022, after Palmer complained of continued pain from his lower back radiating to his left leg, Tran performed several diagnostic tests on Palmer. Based on the tests, Tran believed that Palmer may have had sciatic nerve pain, and she prescribed him Acetaminophen, Duloxetine, and Prednisone for the pain and inflammation. Tran also educated Palmer on back stretching exercises, and she referred him for a nerve conduction velocity test and electromyography. The second time Tran saw Palmer was on June 21, 2022, in the Wynne Unit's clinic based on Palmer's previously submitted sick calls. At that time, Palmer reported that his symptoms had improved since the June 14 visit.

It is evident from the medical records provided in this case that Palmer has received extensive care for his back and leg pain from Tran and other providers at the Wynne Unit and UTMB. Where the medical records demonstrate that appropriate care was provided,

-27-

any claim that a prisoner was denied medical treatment lacks merit. See McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference to medical needs claim where medical records document that the prisoner was not denied medical attention).

In his response to Tran's MSJ, Palmer argues that he did not submit an I-60 on August 31, 2022, to medical regarding his back pains.[121]  The summary judgment evidence, however, includes an I-60 that is stamped with the date of August 31, 2022, in which Palmer complained about his back pain and asked about a medical appointment he allegedly missed.[122]  In Palmer's Response, he also claims that he did not have an appointment with a unit medical provider on September 1, 2022.[123]  The summary judgment evidence, however, contains eight pages of detailed notes about Palmer's visit to the Wynne Unit's clinic that day.[124]  Palmer also denies being seen by a unit provider on September 25, 2022.[125]  Again, the evidence submitted by Tran shows that not only was Palmer examined by a unit provider on this date, but that the provider instructed Palmer to walk and stretch every day for pain management, to

---

[121]Palmer's Response, Docket Entry No. 34, p. 1.

[122]Sick Call Req., Ex. A to Tran's MSJ, Docket Entry No. 30-2, p. 41.

[123]Palmer's Response, Docket Entry No. 34, p. 1.

[124]See Correctional Managed Health Care Urgent/Emergent Care Record, Ex. A to Tran's MSJ, Docket Entry No. 30-2, pp. 42-48.

[125]Palmer's Response, Docket Entry No. 34, p. 2.

continue taking Duloxetine for nerve pain, and the provider prescribed Ibuprofen and Acetaminophen for pain management.[126]

In sum, Palmer presents no probative summary-judgment evidence controverting his medical records. Likewise, Palmer presents no probative summary-judgment evidence that Tran knew of and disregarded an excessive risk to his health or serious medical needs. Because Palmer fails to establish a constitutional violation, Tran is entitled to qualified immunity from his Eighth Amendment claims. Tran's motion for summary judgment will be granted.

## C.  Remaining Defendants and Claims

As noted, despite filing an answer,[127] defendants Thompson, Harrison, and Henderson did not join the TDCJ Defendants' MSJ. Palmer alleges that Thompson, Harrison, and Henderson violated his constitutional rights during the underlined use of force that occurred on August 31, 2022. Because the affirmative defense of failing to exhaust the TDCJ administrative grievance process would also apply to the claims against these defendants, the court considers whether granting summary judgment in favor of these defendants — who filed an answer but did not join in the TDCJ Defendants' MSJ — is appropriate.

---

[126]See Correctional Managed Health Care Clinic Notes, Ex. A to Tran's MSJ, Docket Entry No. 30-2, pp. 66, 70-71.

[127]See Defendants' Answer, Docket Entry No. 19.

-29-

Federal Rule of Civil Procedure 56(f)(1) provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f)(1); see also Norton v. Assisted Living Concepts, Inc., 786 F. Supp. 2d 1173, 1187 (E.D. Tex. 2011) ("Under the recently added Rule 56(f)(1), a court may on its own initiative grant summary judgment for a nonmovant after giving notice and a reasonable time to respond."); Nesbitt v. Wells Fargo Bank, N.A., Civil Action No. 4:22-CV-1479, 2023 WL 4238513, at *5 (S.D. Tex. June 8, 2023) ("Jelenis filed an Answer (ECF 24) but did not join the Motion for Summary Judgment filed by Defendants Wells Fargo Bank and Select Portfolio Servicing.  ECF 23 at 1.  However, district courts may grant summary judgment in favor of a non-moving party if the party opposing summary judgment has notice and reasonable time to respond.") (citing Fed. R. Civ. P. 56(f)(1)), M&R adopted by Nesbitt v. Wells Fargo Bank NA, Civil Action No. 4:22-CV-01479, 2023 WL 4237097 (S.D. Tex. June 28, 2023).

Although Thompson, Harrison, and Henderson did not join in the TDCJ Defendants' MSJ, they did plead failure to exhaust administrative remedies in the Defendants' Answer.[128]  The claims against the TDCJ Defendants who participated in the alleged use of force that occurred on August 31, 2022 — that is, the claims against Choat and Walker — will be dismissed based on Palmer's failure to exhaust available administrative remedies as required

---

[128]See id. at 2-3.

-30-

by 42 U.S.C. § 1997e(a).  The claims against Thompson, Harrison, and Henderson are also based on the alleged use of force that occurred on August 31, 2022.

Palmer must show within twenty days of the date of this Memorandum Opinion and Order why his constitutional claims against Thompson, Harrison, and Henderson should not be dismissed for the same reasons that his constitutional claims against the other defendants who participated in the August 31, 2022, alleged use of force will be dismissed.

## IV.  Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Defendants Warden Rodger Bowers, Ryan Choat, Justin Sands-Wable, and Johnny Walker's Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED**.  The claims against these defendants are **DISMISSED WITHOUT PREJUDICE** for Palmer's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act.

2. Defendant Tanesha Tran's Motion for Summary Judgment (Docket Entry No. 30) is **GRANTED**.  The claims against Tran are **DISMISSED WITH PREJUDICE**.

3. Pursuant to Rule 56(f), notice is hereby given of the court's intention to grant summary judgment for defendants Thompson, Harrison, and Henderson under Federal Rule of Civil Procedure Rule 56(f)(1) based on the affirmative defense of failure to properly exhaust administrative remedies before filing suit. **Palmer is given twenty (20) days from the date of this Memorandum Opinion and Order to respond to the court's notice.  The defendants are granted ten (10) days from the date of the plaintiff's response, if any, to reply**.

-31-

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties**.

**SIGNED** at Houston, Texas, on this 20th day of September, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-32-